IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE ALFREDO AGUILAR,

    Plaintiff,

vs.                                                     No. CIV 24-1180 JB/JHR

N2MIS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant N2MIS's Motion To Dismiss Or In The Alternative [For] More Definitive Statement, filed November 29, 2024 (Doc. 3)("MTD"); (ii) the Plaintiff's Request for Appointment of Legal Counsel, filed December 4, 2024 (Doc. 7)("Motion for Appointment of Counsel"); and (iii) the Plaintiff's Motion for Leave to Amend Complaint, filed December 11, 2024 (Doc. 14)("Motion to Amend"). The primary issues are: (i) whether Jose Alfredo Aguilar has sufficiently pled a claim under 10 C.F.R. § 1046.15 and the Americans with Disabilities Act, 42 U.S.C. § 12101; (ii) whether the Court grants Aguilar leave to file an amended Complaint notwithstanding Defendant N2MIS's objection of futility; and (iii) whether the Court should appoint counsel for Aguilar. Having reviewed the briefing, the record, and relevant law, the Court concludes that: (i) Aguilar has not sufficiently pled a claim under either 10 C.F.R. § 1046.15 or the Americans with Disabilities Act, 42 U.S.C. § 12101; (ii) the Court does not grant Aguilar leave to file an amended Complaint with regards to the 10 C.F.R. § 1046 claim but allows Aguilar leave to file an amended Complaint with regards to the Americans with Disabilities Act, 42 U.S.C. § 12101; and (iii) the Court declines to appoint counsel for Aguilar. Accordingly, the Court grants in part and denies in part the Motion to Dismiss; grants in part and denies in part the Motion to Amend; and denies the Motion for Appointment of Counsel.

**BACKGROUND**

Aguila files his pro se Civil Complaint in State court on October 10, 2024 alleging that his former employer, Defendant N2MIS, unlawfully terminated his employment under both 10 C.F.R. § 1046.15 and the Americans with Disabilities Act, 42 U.S.C. § 12101. N2MIS then removes the case to federal court, and files a MTD under Federal rules of Civil Procedure 12(b)(6) and Federal rules of Civil Procedure 12(e) on November 29, 2024. Aguilar then files a Motion for Appointment of Counsel on December 4, 2024, and a Motion to Amend on December 11, 2024.

1. **Pro Se Complaint.**

Plaintiff Jose Alfredo Aguilar filed his pro se Civil Complaint on October 10, 2024, alleging his former employer, Defendant N2MIS, terminated his employment "based on claims of disqualification from medical clearance under 10 CFR [sic] 1046" in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"). Civil Complaint, filed November 21, 2024 (Doc.1)("Complaint"). Aguilar alleges that N2MIS failed to provide the reasonable accommodation of an independent psychological exam as 10 C.F.R. § 1046.15 requires. See Complaint ¶ 3, at 4. He says that he requested the independent examination after being deemed medically disqualified from the job but was terminated before the examination could happen. See Complaint ¶ 3, at 4. Aguilar believes N2MIS viewed him as "mentally unstable," and so endorsed work restrictions "without any nondiscriminatory reason or supporting evidence." See Complaint ¶ 3, at 4. This alleged "fail[ure] to engage in any interactive process regarding reasonable accommodation" leads to Count One for violation of 10 C.F.R. § 1046.15 and Count Two for violation of the ADA. See Complaint ¶ 3, at 4. He requests compensatory damages, back pay,

front pay, prejudgment and post judgment interest, punitive damages, injunctive relief, costs, and attorney's fees. See Complaint ¶ 5, at 5.

**2. Motion to Dismiss.**

N2MIS removes the matter to federal court, Notice of Removal, filed November 11, 2024 (Doc.1), in the United States District Court, District of New Mexico, and files the MTD in lieu of an answer on November 29, 2024. Aguilar responds on December 2, 2024, See ("Motion to Dismiss Response"), and N2MIS replies on December 9, 2024, See ("Motion to Dismiss Reply"). N2MIS argues that the Court must dismiss the Complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure or that Aguilar must provide a more definite statement under rule 12(e) of the Federal Rules of Civil Procedure, because the Complaint lacks factual specificity and intelligible connection between the facts and elements. See MTD at 2, 3.

N2MIS first alleges that Aguilar fails properly to plead the elements of an ADA discrimination claim. See MTD at 4. Absent any direct evidence of discrimination, N2MIS explains that Aguilar must allege plausibly a prima facie disparate treatment discrimination case under the McDonnell Douglas[1] burden-shifting framework by showing: (i) he is a disabled person within the meaning of the ADA; (ii) he is qualified, meaning that he can perform the job's essential functions with or without accommodation; and (iii) N2MIS terminates his employment because of his disability. See MTD at 4, 5. N2MIS argues that Aguilar fails to establish any of these

---

[1] "In the absence of direct evidence of discrimination, a court uses the McDonnell Douglas burden-shifting framework to evaluate an ADA discrimination claim premised on disparate treatment. Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1192 (10th Cir. 2018). "The first step of the McDonnell Douglas burden-shifting framework requires the plaintiff to establish a prima facie case of discrimination by showing (1) 'that he is disabled within the meaning of the ADA'; (2) that he is qualified for the job held or desired; and (3) 'that he was discriminated against because of his disability.'" Lincoln v. BNSF Ry. Co., 900 F.3d at 1192 (quoting Kilcrease v. Domenico Transp. Co., 828 F.3d 1214, 1218-19 (10th Cir. 2016)).

elements. See MTD at 5.  Because Aguilar cannot establish the first element of the McDonnell Douglas test, N2MIS concludes that the remaining elements fail and thus that the Court must dismiss the ADA claim. See MTD at 6.

N2MIS next argues that Aguilar's alleged violation of 10 C.F.R. § 1046.15, titled "Review of medical certification disqualification," falls short, because that regulation fails the "critical inquiry" whether Congress intended to create a private right of action using the four applicable factors:  (i) whether the plaintiff is of the class for whom the governing statute was enacted;  (ii) whether legislative intent supports or disfavors a private remedy; (iii) whether a private remedy is consistent with the overall legislative scheme; and (iv) whether the desired cause of action concerns State law such that inferring a private remedy from federal law would be inappropriate. See MTD at 7.  The sole case that N2MIS locates on this question holds that the relevant federal statute[2] does not intend to create a private right of action to enforce a closely related regulation, see 10 C.F.R. § 1046.12, titled "Medical, physical readiness, and training requirements for [Protective Force] personnel." See Motion to Dismiss at 7 (citing Davidson v. Martin Marietta Energy Sys., Inc., 797 F. Supp. 613 (E.D. Tenn. 1990)(Jarvis, J.)).  N2MIS urges dismissal of the claim for violation of 10 C.F.R. § 1046.15 on the same grounds.

Aguilar's response attempts to craft a prima facie case of discrimination. See Response to Motion to Dismiss at 1, 2.  First, he says N2MIS knew that he is disabled when N2MIS hired Aguilar because his military separation paperwork shows "permanent disability." See Response to Motion to Dismiss at 1.  Second, he states that he is qualified for the Range Safety Officer position based on his DD214 paperwork.[3] See Response to Motion to Dismiss at 1.  Third, he asserts the

---

[2] The Atomic Energy Act of 1954, codified at 42 U.S.C. §§ 2011.

[3] DD214 refers to a separation report from military service. https://www.archives.gov/personnel-records-center/dd-214.

adverse action is N2MIS's "failure to fulfill the verbally agreed-upon reasonable accommodation of a second independent psychological evaluation" for his disability. See Response to Motion to Dismiss at 1.  He argues another adverse action is N2MIS's failure to engage in an interactive dialogue after he requested the evaluation, which resulted in his termination. See Response to Motion to Dismiss at 2.  The remainder of the response reiterates these points. See Response to Motion to Dismiss at 2-4.  Aguilar also assures that he exhausted his pre-suit administrative remedies. See Response to Motion to Dismiss at 5.

N2MIS replies that Aguilar "attempt[s] to amend [the] Complaint through an improper vehicle." See Reply in Support of Motion to Dismiss at 2.  Although Aguilar adds new facts and law to the response, N2MIS notes his failure to address the private right of action problem. See Reply in Support of Motion to Dismiss at 2, 3.  N2MIS ultimately maintains Aguilar fails to "link the factual allegations to any elements of his ADA claim," and so, the Court must dismiss the Complaint. See Reply in Support of Motion to Dismiss at 2, 3.

   3. **Request for Appointment of Legal Representation.**

Aguilar files a Motion for Appointment of Counsel on December 4, 2024, to which N2MIS does not respond.  He requests counsel because of the "extraordinary nature of his case" involving "significant legal questions," such as whether N2MIS provides a reasonable accommodation or engages in the interactive process. See Motion for Appointment of Legal Counsel at 1.  He also cites his health conditions hampering his ability effectively to represent himself. See Motion for Appointment of Legal Counsel at 1.

   4. **Motion for Leave to Amend Complaint.**

Aguilar files a Motion to Amend on December 11, 2024, and N2MIS responds on December 26, 2024. See Response to Motion for Leave to Amend Complaint, (Doc. 16).  Aguilar

replies on December 27, 2024. See Reply in Support of Motion for Leave to Amend Complaint, (Doc. 17).  Aguilar files the motion "to add a more descriptive statement" under D.N.M. L. R.-Civ 15. 1 and submits his proposed amended complaint. See Motion for Leave to Amend Complaint at 4.

The proposed amended complaint adds new facts to the original. See Motion for Leave to Amend Complaint at 5, 6.  Aguilar now discloses that he "[s]uffers from a physical impairment that affects his nervous system and left extremity and suffers from radiculopathy which limits his ability to lift and a mental disability that affects his learning, concentration and sleep." Motion for Leave to Amend Complaint at 5.  He also says that he asked for "an independent psychological evaluation for a medical clearance hold" the need for which "was never communicated to [him] until [he] was unable to attend a training class due to being uncleared." Motion for Leave to Amend Complaint at 6.  He further alleges the independent examination "was supposed to take place with a Dr. King in the first week of February 2024" to "potentially clear [his] medical hold." Motion for Leave to Amend Complaint at 5, 6.  Aguilar asserts that, "[i]nstead, [he] was restricted from the lab property on February 1[,] 2024" and "forced to sign termination papers on February 8, 2024." Motion for Leave to Amend Complaint at 5.  Aguilar still presents one count for ADA disability discrimination and a second count for violation of the "reasonable accommodation protection" in 10 C.F.R. § 1046.15. Motion for Leave to Amend Complaint at 6, 7.

N2MIS argues that the amendment is futile. See Response to Motion for Leave to Amend Complaint at 1.  First, Aguilar still asserts a 10 C.F.R. § 1046.15 violation without addressing the lack of a private right of action to do so. See Response to Motion for Leave to Amend Complaint at 2, 3.  Second, the ADA claim still lacks sufficient factual allegations to establish Aguilar was qualified for the job and terminated because of his disability. See Response to Motion for Leave

to Amend Complaint at 4, 5.  N2MIS notes that Aguilar relies on "a review of his fitness to be able to perform the job" to establish a qualified disability. Response to Motion for Leave to Amend Complaint at 5.

Aguilar replies that his short and plain statement shows his right to relief while "exercising his HIPPA [sic] rights to privacy." Reply in Support of Motion for Leave to Amend Complaint at 1, 2.  He says that he has exhausted all administrative remedies and provided the relevant EEOC documentation with his original Complaint, and reasserts his belief that N2MIS has violated the ADA and 10 C.F.R. § 1046.2 by denying his independent evaluation. See Reply in Support of Motion for Leave to Amend Complaint at 2, 3.

## LEGAL STANDARDS

The Court first discusses the standard for Federal Rules of Civil Procedure 12(b)(6).  Following, the Court discusses the standard for Federal Rules of Civil Procedure 12(e).  Next, the Court discusses the standard for appointment of counsel in civil cases.  Finally, the Court discusses the standard governing a motion for leave to amend.

1. **Rule 12(b)(6) Standards.**

Defendants may move for dismissal on part or all of a complaint for failure to state a plausible claim for relief. See Fed. R. Civ. P. 12(b)(6).  To survive a rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Iqbal") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)("Twombly")).  A claim is "plausible" when the court can reasonably infer from the complaint that the defendant is liable for the plaintiff's injuries. Iqbal, 556 U.S. at 678.  Only factual allegations matter to this determination, and the court must disregard assumptions, speculation, or legal conclusions within the complaint. See Truman v.

Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021)(citing Twombly, 550 U.S. at 555); Bledsoe v. Carreno, 53 F.4th 589, 606–07 (10th Cir. 2022). In addition, while not needing lengthy or detailed facts, the plaintiff must elaborate beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. The court must construe, however, the complaint and make all reasonable inferences from it in the plaintiff's favor. Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

2. **Rule 12(e) Standards.**

A party may move for a more definite statement of any pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Such motions are disfavored in light of the liberal discovery that the federal rules provide, and the court grants the motion only when a party is unable to determine the issues requiring a response. See Resolution Tr. Corp. v. Thomas, 837 F. Supp. 354, 355 (D. Kan. 1993)(Van Bebber, J.). "A motion for more definite statement should not be granted merely because the pleading lacks detail; rather, the standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission." Advantage Homebuilding, LLC v. Assurance Co. of America, No. Civ. A. 03-2426-KHV, 2004 WL 433914, at * 1 (D. Kan. March 5, 2004)(Vratil, J.).

3. **Appointment of Counsel.**

There is no right to counsel in civil cases. See Johnson v. Johnson, 466 F.3d 1213, 1217 (10th Cir. 2006). Due process may provide, however, for civil counsel under certain circumstances, such as where the proceedings could result in the deprivation of the pro se litigant's fundamental liberties. See, e.g., Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 32, 37

(1981)(discussing imprisonment and termination of constitutional parental rights). Even though there may be a limited right in some cases, the Constitution does not guarantee the litigant's right to an attorney in all cases. See Lassiter v. Dep't of Soc. Servs., 452 U.S. at 32.

Statutes also may grant discretionary power to appoint counsel for a pro se litigant if the claims or parties qualify. See, 42 U.S.C. § 2000e-5(f)(1)(granting discretionary power to appoint counsel for employment discrimination claims); 28 U.S.C. § 1915(e)(1) (granting discretionary power to appoint counsel for pro se litigants proceeding in forma pauperis). Factors for the court to consider in its discretion include the case's merits and nature, the litigant's capacity to present his or her claims, the complexity of issues, and the litigant's diligence in finding and ability to afford counsel. Compare Rachel v. Troutt, 820 F.3d 390, 397 (10th Cir. 2016)(discussing factors for § 1915(e)(1)), with Castner v. Colo. Springs Cablevision, 979 F.2d 1417, 1420-21 (10th Cir. 1992)(discussing factors for § 2000e-5(f)(1)). "The Court must consider the totality of the circumstances and determine whether refusing a pro se litigant's request for counsel at that time would result in fundamental unfairness to the litigant, impinging on his due process rights." Mika v. Brisco, No. CIV 20-0346, 2023 WL 2456647, at *1 (D.N.M. March 10, 2023)(Khalsa, J.). Thus, analysis focuses on whether the litigant demonstrates a basic grasp of the issues at play and can navigate procedure competently enough to continue the suit. See Sweat v. New Mexico, No. 19-cv-00987, 2024 WL 3595494, at *1 (D.N.M. July 30, 2024)(Fouratt, J.); Mika v. Brisco, No. CIV 20-0346, 2023 WL 2456647, at *2; Delgado v. Gutierrez, No. CIV 12-0808, 2014 WL 1957705, at *5 (D.N.M. April 30, 2014)(Browning, J).

4. **Leave to Amend.**

A court may deny leave to amend if amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). Amendment is futile if the pleading "as amended, would be subject to

dismissal." Fields v. City of Tulsa, 753 F.3d 1000, 1012 (10th Cir. 2014)("Fields").  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir.1993).  The decision whether to grant leave to amend is left to the district court's discretion. See Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009); Foman v. Davis, 371 U.S. at 182.  The courts should afford pro se plaintiffs extra latitude to remedy defects in their complaints. See Hall v. Bellmon, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991); Murray v. Archambo, 132 F.3d 609, 612 (10th Cir. 1998).

## ANALYSIS

The Court dismisses the 10 C.F.R. § 1046.15 claim.  The Court also denies amendment of the 10 C.F.R § 1046.15 claim.  The Court grants leave to amend the ADA claim.

**I.   THE COURT DISMISSES WITH PREJUDICE AND DENIES AGUILAR LEAVE TO AMEND THE 10 C.F.R. § 1046.15 CLAIM.**

Aguilar has not stated a claim for a 10 C.F.R § 1046.15 violation.  He has not shown a private right of action exists for that regulation.  He does not counter N2MIS's arguments that no Congressional intent suggests a private cause of action to enforce 10 C.F.R § 1046.15.  He does not counter the argument that no private right of action exists, but insists on maintaining the faulty claim.  The Court grants the motion to dismiss as to Aguilar's claim brought pursuant to 10 C.F.R. § 1046.15.

The Court denies leave to amend the 10 C.F.R. § 1046.15 claim.  Amendment is futile, because a private right of action would not emerge even if Aguilar tried to argue the four factors show otherwise. See Fields, 753 F.3d at 1012.  10 C.F.R. § 1046.15 is in the collection of regulations related to energy, particularly nuclear energy.  See 10 C.F.R. § 1.1.  Part 1046 of

Chapter 10 generally "establishes the medical, physical readiness, training and performance standards for contractor protective force (PF) personnel who provide security services at the Department of Energy" facilities. 10 C.F.R. § 1046.1. Aguilar's specific regulation, See 10 C.F.R. § 1046.15, pertains to "review of medical certification disqualification" of both temporary and permanent medical and physical conditions, and provides for independent review if personnel are disqualified from medical certification. 10 C.F.R. § 1046.15. (a)-(c). Aguilar erroneously presumes the regulation's provision for independent review within the Department of Energy equates to a right to sue his employer in court if an independent review is not conducted. His assumptions find no legal footing.

Davidson v. Martin Marietta Energy Sys., 797 F. Supp. 613 (E.D. Tenn. 1990)("Davidson")(Jarvis, J.), is the only case directly addressing whether a regulation under Part 1046 of Chapter 10 implies a private right of action. See 797 F. Supp. at 616. The plaintiffs there bring a claim that the defendant negligently fails to create a physical readiness training program under 10 C.F.R § 1046.12 in time to help them meet their employment qualifications. 10 C.F.R. § 1046.16 includes a requirement that the "physical readiness program must be developed by the employing organization . . ." 10 C.F.R. § 1046.16(c)(2). Davidson considers the four-factor test leading to the "ultimate question" whether Congress intends to create the private remedy. 797 F.Supp at 616, 617 (citing Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 92 (1981)). The Honorable James Howard Jarvis II, United States Chief District Judge for the United District Court for the Eastern District of Tennessee, concludes that the Atomic Energy Act, 42 U.S.C. § 2011, reveals "no evidence of any intent to permit the creation of a private right of action through 10 C.F.R. Part 1046.12," Davidson, F.Supp at 617, regulating medical, physical readiness, and training requirements for PF personnel. 10 C.F.R. § 1046.12.

10 C.F.R. § 1046.15 emanates from the same legislation intended to assure the security of the nation's atomic science and weaponry. See Davidson, 797 F. Supp., at 617. In this instance, a requirement for independent review of a disqualifying finding accompanies the requirement for certification in § 1046.12. 10 C.F.R. § 1046.15.[4] Therefore, absent any plausible argument or authority signaling that § 1046.15 departs from the Davidson court's reasoning, no private right of action exists to enforce § 1046.15. Aguilar is not left without a remedy, however; if he is qualified[5] for the job but is terminated as disqualified for a discriminatory reason, the ADA provides a path to relief. Consequently, the Court dismisses this claim with prejudice and denies leave to amend.

## II.   THE COURT GRANTS DISMISSAL AND GRANTS AGUILAR LEAVE TO AMEND THE ADA CLAIM.

Aguilar's Complaint does not state a claim for an ADA violation as currently pled, but the Court grants leave to amend this claim. Count Two of his complaint alleges "violation of the Americans with Disabilities Act," because "N2MIS regarded Plaintiff as mentally unstable, endorsing restrictions imposed by Dr. Justus without any nondiscriminatory reason or supporting evidence, violating ADA protections against discrimination based on perceived disabilities."

---

[4] A precondition to independent review is that the "individual initiating such a review must submit the request for an Independent Review in writing to EHSS-1 within ten working days of the date of notification (date of written correspondence) of disqualification," and send copies of the request to the employer and to the Officially Designated Federal Security Authority for the worksite. 10 C.F.R. § 1046.15. See 10 C.F.R. § 1046.3 (providing the definition of "ODFSA"). Aguilar's Complaint does not allege that he submitted the required written request to both entities; if he did, that defect potentially could be corrected by amendment. The Court determines, however, that amendment would be futile based on the absence of a private right of action.

[5] Though not material to this analysis, Aguilar's Complaint signals that he may not be qualified for the previous position: he seeks front pay until he finds other employment, because "entering back into employment would be detrimental to Plaintiff's health." Complaint ¶ 5, at 5.

Complaint ¶ 3, at 4. While the original Complaint pleads basic disability discrimination, the proposed amendment presents a failure-to-accommodate theory hinging on Aguilar's termination before the "reasonable accommodation" of an independent evaluation occurred. See Motion to Amend at 6. Whether that is a failure to accommodate,[6] an adverse employment action, or indirect evidence of discriminatory motive will need to be sorted out.

Because Aguilar does not allege direct evidence of discrimination, the McDonnell Douglas burden-shifting framework applies to an ADA disparate treatment discrimination claim. See Hawkins v. Schwan's Home Serv., Inc., 778 F.3d 877, 883 (10th Cir. 2015). The first step of the McDonnell Douglas test requires the plaintiff to establish a prima facie case of discrimination by showing (i) "that he is disabled within the meaning of the ADA"; (ii) that he is qualified for the job held or desired; and (iii) "that he was discriminated against because of his disability." Kilcrease v. Domenico Transp. Co., 828 F.3d 1214, 1218-19 (10th Cir. 2016). If the plaintiff advances a prima facie case of discrimination, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for not hiring the plaintiff. McDonnell Douglas, 411 U.S. at 802. If the employer articulates a satisfactory reason, the burden shifts back to the plaintiff to demonstrate that the employer's reason is a pretext for discrimination. See DePaula v. Easter Seals El Mirador, 859 F.3d 957, 970 (10th Cir. 2017). "A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." DePaula v. Easter Seals El Mirador, 859 F.3d at 970.

The ADA defines the phrase "discriminate against a qualified individual on the basis of disability" to include "not making reasonable accommodations to the known physical or mental

---

[6] The Court recites the definition of "reasonable accommodation" in the following paragraph.

limitations of an otherwise qualified individual with a disability." Punt v. Kelly Servs., 862 F.3d 1040, 1048 (10th Cir. 2017)("Punt").  The ADA defines "reasonable accommodation" to "include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, . . . and other similar accommodations." 42 U.S.C. § 12111(9).  "[R]easonable accommodation refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." Punt, 862 F.3d at 1051 (quoting Cisneros v. Wilson, 226 F.3d 1113, 1129 (10th Cir. 2000)).

A specific failure-to-accommodate claim under the ADA is evaluated under a modified McDonnell Douglas framework. See Punt, 862 F.3d at 1049-50.  Under the first step of the modified framework, a plaintiff must demonstrate that "(i) [he or she] is disabled; (ii) [he or she] is 'otherwise qualified'; and (iii) [he or she] requested a plausibly reasonable accommodation." Punt, 862 F.3d at 1050 (quoting Sanchez v. Vilsack, 695 F.3d 1174, 1177 (10th Cir. 2012)).  If the plaintiff makes a showing on all three elements, the burden "'shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer.'" Punt, 862 F.3d at 1050 (quoting Smith v. Midland Brake, Inc., a Div. of Echlin, Inc., 180 F.3d 1154, 1179 (10th Cir. 1999)).

Regardless which ADA claim he intends to allege, Aguilar has not stated yet a prima facie case for each element of either claim. See Smothers v. Solvay Chemicals, Inc., 740 F.3d 530, 539 (10th Cir. 2014) ("Smothers")("[P]laintiff's burden at the prima facie stage requires only a small amount of proof necessary to create an inference of discrimination").  However, Amendment is not yet futile, because the proposed amended complaint supplies more allegations and evinces

Aguilar's intent to cure the deficiencies.  See Motion to Amend at 5.  For example, N2MIS notes that Aguilar's original Complaint fails to identify a disability.  See Motion to Dismiss at 5.  The proposed amended complaint, however, states that Aguilar has "a physical impairment that affects his nervous system and left extremity . . . radiculopathy . . . and a mental disability that affects his learning, concentration and sleep."  Motion to Amend at 5.  See Smothers, 740 F.3d at 545 (concluding that ADA disability requires showing (i) an impairment (ii) substantially limiting (iii) a major life activity).  Even if this suffices for a prima facie showing of disability, Aguilar must do the same for each element of each claim.  See Lincoln v. BNSF Railway Co., 900 F.3d 1166, 1212 (10th Cir. 2018)("The absence of probative evidence as to any single element necessary to establish a prima facie claim terminates the action.").

Because Aguilar is pro se and this opportunity is his first to cure pleading deficiencies, the Court grants N2MIS's motion to dismiss as to the ADA claim, but grants leave to amend that claim.  Aguilar is to clarify which type of ADA claim or claims he wishes to pursue, and plead each element with particularity.

## III.    THE COURT DENIES AGUILAR'S MOTION TO APPOINT COUNSEL.

Aguilar does not have a right to counsel for his civil claims.  See Johnson v. Johnson, 466 F.3d at 1217.  The Court does not see other considerations warranting appointment of counsel in this matter.  None of Aguilar's fundamental liberties are at stake, and he has shown himself capable of presenting his claims diligently.  Aguilar filed his motion for leave to amend after N2MIS files its Motion to Dismiss, demonstrating his satisfactory grasp of basic civil procedure and pleading requirements.  Thus, the Court denies the Motion for Appointment of Counsel.

**IT IS ORDERED THAT:** (i) Defendant N2MIS's Motion To Dismiss Or In The Alternative [For] More Definitive Statement, filed November 29, 2024 (Doc. 3) is granted in part

and denied in part; (ii) the claim for violation of 10 C.F.R. § 1046.15 is dismissed; (iii) the claim under Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA") is dismissed without prejudice, but the Plaintiff is granted leave to amend; (iv) the Plaintiff's Request for Appointment of Legal Counsel, filed December 4, 2024 (Doc. 7) is denied; (v) the Plaintiff's Motion for Leave to Amend Complaint, filed December 11, 2024 (Doc. 14) is granted in part and denied in part; (vi) the Plaintiff may amend his ADA claim but not his violation of 10 C.F.R. § 1046.15 claim; (vii) the Plaintiff may file an amended complaint alleging the remaining claim for an ADA violation in compliance with this order; and (viii) the Plaintiff must attach all paperwork showing he exhausted administrative remedies before filing suit.

                                            _____
                                            UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Jose Alfredo Aguilar
Las Mesa, New Mexico

       *Plaintiff Pro Se*

Justin Greene
Jackson Lewis P.C.
Albuquerque, New Mexico

       *Attorney for Defendant*